to furnish a home for the plaintiff from the income derived from the property which she received under that clause of the will. It was undoubtedly the duty of the defendant on accepting the devise first to provide from the income thereof a home for the plaintiff. The defendant was to have for her own use and enjoyment the remainder of the income subject to the further obligation to provide a home, if the income would permit of her so doing, for the testator's son Harry, should he need it. This tends to show that the testator realized that the income might be insufficient to provide a suitable home for all of them, and, so far as he imposed upon his wife a condition to provide a home for his daughter and son, it was to be from the income of the property which she received under that bequest and devise. It is difficult to discern any theory upon which a court of equity can enforce a compliance with the defendant's obligation, and I am of opinion that the plaintiff's only remedy is an action at law from time to time on proof that there is, or should be by proper management, net income from the property with which the defendant could perform her obligation.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., concurs.

---

PALMER & SINGER MFG. CO. et al. v. BARNEY ESTATE CO.

(Supreme Court, Appellate Division, First Department. February 16, 1912.)

LANDLORD AND TENANT (§ 108*)—LEASES—FORFEITURE—DELAY IN PAYING RENT.

Equity will not forfeit a lease for 21 days delay in paying quarterly rent payable in advance, under a clause in the lease permitting the lessor to terminate the lease for a default in paying rent, where previous rents were received after due (in one instance 30 days afterward) without complaint.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 333–335; Dec. Dig. § 108.*]

Appeal from Special Term, New York County.

Action by the Palmer & Singer Manufacturing Company and another against the Barney Estate Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

See, also, 143 App. Div. 906, 127 N. Y. Supp. 1135.

Argued before INGRAHAM, P. J., and LAUGHLIN, McLAUGHLIN, CLARKE, and SCOTT, JJ.

Masten & Nichols (Walter E. Hope, of counsel), for appellant.
Jay Noble Emley, for respondents.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J.   [1]  The defendant is the owner in fee and landlord of certain premises known as 1618 and 1620 Broadway, in the borough of Manhattan, and the plaintiffs are tenants thereof under a lease entered into in 1906 between the then owner of the property and plaintiffs' assignor.  The said lease was for a term of 10 years, and provided for an annual rent of $19,500 to be paid in advance in equal quarterly payments.

The said lease further provided:

"Ninth. In case of default by said tenant in any of the covenants herein contained or in case the whole or any part of said premises shall become vacant, the landlord may at his option terminate this lease at any time by giving thirty days previous notice to the tenant, said notice to be left on the premises with any person in charge thereof, or to be affixed upon a conspicuous part of the premises, if they are vacant; or the landlord may at his option re-enter the said premises and resume possession thereof, either by force or otherwise, without being liable for any prosecution therefor, and relet the same during the remainder of the term, at the best rent that he can obtain for account of the tenant who shall make good any deficiency."

The Special Term has found as a fact that said ninth clause of the lease herein, so far as same was applicable to the covenant to pay rent, was inserted as a security merely for such payment and was so regarded by the parties.

The building which it was contemplated would be erected upon the premises was completed, and the tenants entered into occupation of the same under the terms and provisions of the said lease, on the 18th day of January, 1908, and on that day paid the first quarterly installment of rent in advance.  Quarterly installments of rent in advance were thereafter paid as follows:

| Due According to Lease. | Paid by Check Dated. |
| --- | --- |
| April 18, 1908. | April 18, 1908. |
| July 18, 1908. | July 18, 1908. |
| October 18. 1908. | October 19, 1908. |
| January 18, 1909. | February 18, 1909. |
| April 18, 1909. | April 20, 1909. |
| July 18, 1909. | July 21, 1909. |
| October 18, 1909. | November 3, 1909. |

The court has found that payment of rent on the first day of each quarter had not been insisted upon; that only the first three quarterly installments out of eight were paid at the beginning of the quarter; that a custom had grown up between the landlord and the tenants of accepting and paying the rent on a day subsequent to the beginning of each quarter; that this custom was relied upon by the plaintiffs almost continuously throughout the whole term of the lease, and was recognized by both plaintiff and defendant as a custom binding upon both of them, and such custom was in full force and effect on the 18th day of January, 1910; that the quarterly installment of rent in advance due said January 18, 1910, according to the terms of the lease, was not paid on that date, and on January 29, 1910, defendant wrote:

"We take the liberty of calling your attention to the fact that your rent due January 19th amounting to $4,875 is still unpaid.  Kindly favor us with your check for the amount by return mail."·

And there was inclosed therewith a statement dated February 1, 1910:

"To amount of rent due on garage building 1620/1624 Broadway, Jany. 18/April 18. $4875."

The vice president of the defendant company testified that, after he wrote the letter of January 29th, he had a telephone conversation with the president of the plaintiff companies, whom he had called up, on the 1st, 2d, or 3d of February:

"The substance of it was that I would like a check. Mr. Singer said it would be sent. That is all there was said. There was not anything said about canceling the lease. It was not referred to at all. Nothing was said to indicate that because the rent had not been paid two or three weeks before that we would not take the rent. We were willing to take the rent at that time. I asked him for it. I have said I didn't say anything to him when I asked him for that rent, that, if he didn't send it down, we would cancel the lease."

On February 9, 1910, the rent still being unpaid, the landlord served upon the plaintiffs the following notice:

"You and each of you are hereby notified that Barney Estate Company, landlord, * * * in consequence of the default of the tenant under said lease to pay the rental therein covenanted to be paid hereby elects to terminate the said indenture of lease upon the 12th day of March, 1910. in accordance with the provisions thereunto provided. Thirty days previous notice of such termination is hereby given in accordance with the terms of said lease and you are hereby notified to deliver up and vacate said premises on or before the said 12th day of March, 1910."

Immediately upon receipt thereof, plaintiffs' treasurer telephoned and offered to immediately pay the rent, but the defendant would not accept the same. On February 10th the treasurer tendered the rent for the quarter, and on the 14th he tendered the rent plus the interest from the 18th of January to February 14th, and from that time to this tenders have been kept alive. A bond for $27,000 has been given and the rents as they accrued have been deposited, so that the defendant could, if it wished, obtain them. Thereafter the defendant brought dispossess proceedings against the plaintiffs as holdovers after the termination of their lease, but the tenants had a decision in their favor which, on appeal to the Appellate Term, was reversed and a new trial ordered. Before the coming on of the new trial, this equitable action was instituted, and a preliminary injunction was granted by the Special Term which was affirmed unanimously on appeal to this court, without opinion.

In the agreed statement of facts submitted to the Special Term, it is conceded that the rental value of the premises since January 1, 1910, is substantially more than the amount of rent reserved in the lease. As conclusions of law, the Special Term found that the defendant waived the payment of rent for the quarter beginning January 18, 1910, on the particular day specified in the lease, and that plaintiffs are entitled to judgment as asked for excusing plaintiffs for not paying the rent upon the rent day mentioned, and that the said lease is in full force and effect and binding upon the parties hereto in all respects, and plaintiffs were entitled to the injunction prayed for, and

from the judgment entered in accordance therewith defendant appeals.

It is apparent from the record that there is and has not been the slightest chance that defendant would fail to receive the full amount of rent due. It has been tendered repeatedly, and is thoroughly secured by bond and deposit, and the question is whether a court of equity is required to declare a forfeiture of a long term lease for a 21 days delay in the payment of the quarterly rent payable in advance under the circumstances disclosed by this record. The plaintiffs are engaged in the automobile business, and it is suggested that the month of January is a dull time in said business; that in the previous year the rent for the quarter due on January 18, 1909, was not paid until February 18, 1909, a full month after the due day, and was then received without any suggestion of a forfeiture of the lease.

A significant fact is that in the conversation over the telephone between the vice president of the defendant and the president of the plaintiff companies, held on the 1st, 2d or 3d of February, as Mr. Brundage testified, when he said that he would like a check, Mr. Singer said it would be sent, and he further testified that:

"Nothing was said about canceling the lease or to indicate that because the rent had not been paid for two or three weeks we would not take the rent. We were willing to take the rent at that time."

Yet six days later the notice was served canceling the lease for default in payment on January 18th. Can it be doubted for a moment that if Mr. Brundage had said to Mr. Singer, "If you don't sent the check at once, we will be obliged to exercise the option given to us by the lease and cancel it," that he would have received it, it appearing that immediately upon receipt of the notice of February 9th the full amount due with interest was tendered?

In view of the previous relations of the parties and their mutual conduct, it was not fair without notice to attempt to exercise the right to cancel. Forfeitures are not favored in equity. This provision was inserted by way of security, but is being made use of, not to enforce payment of an amount due, but to regain possession of a valuable piece of property of which the rental value has substantially increased since the making of the lease above the amount of the rent reserved.

In Horton v. N. Y. C. & H. R. R. R., 12 Abb. N. C. 30, affirmed without opinion, 102 N. Y. 697, where a similar action was brought to secure relief to the plaintiffs from the forfeiture of a term, Mr. Justice Daniels said:

"Under the well-settled principles observed and enforced in courts of equity where such a forfeiture has been provided for as a security to the lessors for the payment of the rent reserved, as it was by this lease, the tenants have usually been relieved from the consequences of their fault when a speedy application has been made for that purpose. The right to forfeit the tenants' term has been justly regarded as in the nature of a security provided by the terms of the lease to the lessors for the payment of the rent, and for that reason full effect can be given to it by allowing the tenants to pay the rent in arrear with interest in the meantime accruing upon it. 1 Story, Eq. Jur. (12th Ed.) § 187. By the proof given upon the trial, it was also made to appear that indulgence was extended to the lessees in the payment of the rent reserved by the lease. And, while this did not strictly relieve them of the obligation to perform their covenant, it still constituted

an excuse for the omission to pay the rent at the time when it matured. * * * After the tenants had been in this manner lured into negligence, it would be a fraud upon them to permit the lessors or their grantee to insist upon the forfeiture."

In Giles v. Austin, 62 N. Y. 486, there was a covenant in the lease that the lessee should pay the taxes and assessments as the same should become due and payable. After notice the lessor brought an action of ejectment alleging that the lessee had neglected and refused to pay the taxes for a number of years. After the action in ejectment had been instituted, plaintiff brought an action to be relieved from his forfeiture. Judge Rapallo said:

"That covenants to pay taxes and assessments are in the nature of covenants to pay money, and that forfeitures incurred by their breach may be relieved against upon the same principles. By the payment of the amount due at any time before sale or the expiration of the right to redeem, the landlord is placed in precisely the same position as if no default had occurred; and, where there is no bad faith on the part of the tenant, mere delay in making the stipulated payments should not bar him from relief."

In Noyes v. Anderson, 124 N. Y. 175, 26 N. E. 316, 21 Am. St. Rep. 657, Bradley, J., said:

"The power of a court of equity in cases properly requiring it will be exercised to relieve a party against forfeitures and from penalties. And this is upon the principle of equity jurisprudence that a party having a legal right shall not be permitted to avail himself of it for the purposes of injustice or oppression. * * * It is also not only available to cases of leases where forfeiture of the term and entry are provided for as the consequences of nonpayment of rent on the day it becomes due, but is extended to other cases, and more especially to those (although not necessarily confined to them) where the default resulting in forfeiture is in payment of money, as in such case adequate compensation can be made. Pomeroy, Eq. Jur. §§ 433, 450, 451."

The judgment appealed from should be affirmed, with costs. All concur.